Torrance J. Colvin
7600 Georgia Avenue, NW Suite 100N
Washington, DC 20012
Telephone: (202) 688-1300

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| \OSCAR COLVIN, JR., an individual, and TORRANCE J. COLVIN, an individual,<br><br>Plaintiffs<br>v.<br><br>QUENTIN TARANTINO, an individual, and THE WEINSTEIN COMPANY LLC, a Delaware Limited Liability Company, and COLUMBIA PICTURES, a California Corporation and UNNAMED DOES 1-50.<br><br>Defendants. | Case No.: 1:15-cv-2250<br><br>COMPLAINT FOR DAMAGES<br><br>1. COPYRIGHT INFRINGEMENT 17 U.S.C. §§ 101, ET SEQ.<br>2. ACCOUNTING<br><br><br>JURY TRIAL DEMANDED<br><br>Judge: Hon.<br>Date Action filed:<br>Date set for trial: |

## PROLOGUE

Quentin Tarentino's *Django Unchained* is derived from the copyrighted screenplay *Freedom*. We wrote and circulated *Freedom*. The uniquely original concept of a slave attempting to rescue his family from a brutal plantation owner was first visualized on a late December evening in 2001. Jackson Freeman was the protagonist of the plaintiffs' screenplay *Freedom*. No Jackson Freeman, no Django Freeman. Tarantino's supposedly original screenplay, *Django Unchained* was derived from *Freedom*. The uniquely original premise of *Freedom* was transformed into a vehicle that yielded two Academy awards and monstrous profits. *Django Unchained* has worldwide revenues approaching half a billion dollars ($500,000,000).

There are a number of indicators asserted below that link *Django Unchained* to the plaintiffs' *Freedom*. Jackson Freeman became Django Freeman. Tarantino's derivation is in violation of the United States Copyright Act which reserves the right of derivation to the originators of a copyrightable work. This suit raises the question whether Hollywood insiders can willfully profit from derivative material. Django Freeman is a derivation of Jackson Freeman. *Django Unchained* is a derivation of *Freedom*. Tarantino, The Weinstein Company and Columbia Pictures benefited from the copyright infringement of *Freedom*.

Plaintiffs Oscar Colvin, Jr., and Torrance J. Colvin hereby allege the following:

## INTRODUCTORY ALLEGATIONS

1. *Django Unchained* has earned revenues exceeding well over four hundred million dollars ($400,000,000). The movie earned two Academy Awards – one for best supporting actor and ironically one for best original screenwriting. Before Django Freeman, there was an escaped slave named Jackson Freeman who desired to purchase his family's freedom from a malevolent plantation owner. Before Dr. Schultz, there was Samson, another white man, who would assist Mr. Freeman in his efforts to rescue his loved one(s) from slavery. Before *Django Unchained*, there was *Freedom*. May Hollywood insiders willfully infringe uniquely original material with impunity? Quentin Tarantino recognized the promise of *Freedom* and turned it into a property that will probably generate over half a billion dollars. But the property was not his.

2. The underlying idea and its expressions of *Freedom* were unique. Immediately after voicing the idea, the plaintiffs embarked on the quixotic journey of writing a screenplay despite having little to no experience whatsoever. The idea and its expression were so powerful and unique that plaintiffs were certain there must be a way for *Freedom* to hit the big screen. *Django Unchained* was proof positive that plaintiffs' certainty was not misplaced. In plaintiffs'

screenplay *Freedom*, plaintiff provided the heart, bones and muscles to develop the unique idea that eventually would be transformed into *Django Unchained*. Plaintiffs' Jackson Freeman became Django Freeman. Simply stated, Quentin Tarantino is an infringer who performed plastic surgery on *Freedom*.

3. Under 17 U.S.C., Section 106 of the Copyright Act, Plaintiffs (and/or their parents, subsidiaries or affiliates) own the exclusive rights, among others, to reproduce copies of their copyrighted works, to distribute copies to the public of their copyrighted works, to publicly perform their copyrighted works, to publicly display their copyrighted works, and to make derivative works based upon their copyrighted works.

4. Under 17 U.S.C., Section 106 of the Copyright Act, Plaintiffs (and/or their parents, subsidiaries or affiliates) also own the exclusive rights to authorize others to exercise the rights set forth in the preceding paragraph 3.

5. Neither Plaintiffs nor any other person authorized by Plaintiffs have granted any license, permission or authorization to Defendants to exercise any of the rights set forth in paragraphs 3 and 4 or to authorize others to exercise such rights.

6. This case is about the infringement of the body, structure, theme, and soul of a unique, original, copyrighted screenplay from a production company and its owners by an admitted thief. Defendant Quentin Tarantino ("Tarantino") once stated:

> "I steal from every single movie ever made. I love it - if my work has anything it's that I'm taking this from this and that from that and mixing them together. If people don't like that, then tough titty, don't go and see it, alright? I steal from everything. Great artists steal; they don't do homages."

If Tarantino is correct, he is truly one of the "greatest" of artists as his theft of Plaintiff's screenplay *Freedom* did not even require much mixing of other works to produce what is

arguably the highest grossing Afrocentric movie of all time.  Yet, when questioned about having plagiarized his film *Reservoir Dogs* in an LA Times interview, Tarantino denied that he plagiarized *Reservoir Dogs* and instead stated that he never plagiarized, he only "did homages."  Tarantino cannot keep track whether he steals from other artists or honors them with his rendition. The bottom line is that with Tarantino you usually get someone else's material. The two most iconic scenes in *Pulp Fiction* (Samuel Jackson's biblical pronouncements and Travolta's needle plunge) were derivative.  *Freedom's* heart, bones and muscles permeate *Django Unchained.* The Plaintiffs' copyrighted screenplay led to the greatest revenue producing Afro-centric movie of all time. A movie with a strong undercurrent about slavery was produced that excluded the originating authors from any monetary considerations. So far, the defendants have exercised unfettered control over the Plaintiffs' work.

      7.     Oscar Colvin is a father who responded to a son's request for movie ideas. His first suggestion was vetoed as too dark. The second suggestion was a fantasy about an escaped slave rescuing his family from slavery. This seed grew into *Freedom*. The gestation of *Django Unchained* occurred in a New Hampshire kitchen on a wintry night in 2001. Quentin Tarantino was not there.

      8.     From December 2001 through approximately August 2002, Plaintiffs Oscar Colvin (hereinafter "O. Colvin") and T. Colvin developed *Freedom* to be produced and distributed about a slave unlike any previous depiction of a slave during the slavery period of the United States. The underlying premises of *Freedom* were uniquely original and ultimately proved Academy Award worthy.  An Oscar based on purloined material is now in Tarantino's possession.

9.     Jackson Freeman was born free and then stolen into slavery. Being born free gave him an edge and hardness which the shackles of slavery could not completely eliminate. Though he was a slave, he also knew what *freedom* tasted like. It was a taste that he promised his wife they would taste together; he would do anything in order to escape from the brutal clutches of his slave owner and free his family. In this, he had his wife's blessing. The protagonist slave was eventually forced to serve the Confederate Army. In camp one evening, Jackson was brutally beaten by his owner. A fellow Confederate officer was scornful over Jackson's owner's brutality. In the midst of a battle, he was able to escape, but not before attempting to kill his owner. He immediately fled to the North where he attempted to obtain employment in order to earn enough to purchase his family out of slavery. He quickly realized that he would have to work for decades to purchase his family's freedom. Eventually, he captured the attention of a white benefactor, who promised to assist the slave in obtaining freedom for his family, in reward for the slave's help. The odd couple, consisting of a white man who treats his black escaped-slave counterpart as an equal, return to the plantation housing the slave's family. Upon arriving to the plantation, there is a vicious shootout that occurs when the slave tries to sneak his family off of the plantation with the benefactor's help. The soldier kills the plantation owner in order to save the slave's life. The slave and his family escape under the cover of darkness. The screenplay described above is *Freedom*, written by Plaintiffs O. Colvin and T. Colvin. The infringement of that screenplay is the derivative *Django Unchained*, which was released by defendants The Weinstein Company and Columbia Pictures on December 25, 2012. A mesmerizing beat proved *Blurred Lines* link to copyright infringement. A slave returning to the hellish realm of the South to purchase the freedom of his loved one(s) with the

PLAINTIFFS COMPLAINT FOR DAMAGES

assistance of a Caucasian in the South is the uniquely original beat that links *Django Unchained* to *Freedom*.

10. The Colvins developed a rich, vibrant screenplay, articulating unique plotlines, themes, characters, relationships, settings, scenes, sequences, dialogue, mood, pacing and fictional inventions for *Freedom*. Approximately one year later, happy with the final version, T. Colvin registered it with the Writers Guild of America and then submitted it to various agencies. It was sent to Creative Artists Agency, care of agent Michael Nilon, where it received positive coverage. Torrance Colvin eventually went to Los Angeles and met with Mr. Nilon, regarding the screenplay, with hopes that it would make a starring vehicle for his client, Morris Chestnut.

11. In addition, through a couple of contacts from law school, trainee Robin Samms and agent Charles King, T. Colvin submitted *Freedom* to the William Morris Agency. It also received coverage there, on or about October 22, 2002. The coverage there indicated several areas of improvement that were required.

12. While in town to meet with Michael Nilon in the spring of 2004, T. Colvin met with Robin Samms and Charles King at WMA. Robin showed T. Colvin around the offices and while speaking about directors/producers that might be appropriate for *Freedom*, Robin indicated that Michael Simpson, an agent at William Morris Agency, represented Quentin Tarantino. Upon information and belief, the coverage for *Freedom* may have been requested from Mr. Simpson's desk. Plaintiffs surmise that defendant Tarantino had access to one of the agencies' coverage *Freedom*. In a block for location, the reviewer marked "Southern". Is it a coincidence that during the build up to the release of *Django Unchained* that Tarantino was advancing the inanity that he was calling the projected movie a "Southern"?

- 6 -
PLAINTIFFS COMPLAINT FOR DAMAGES

13. Sometime in mid-2004, having received no options or offers regarding the screenplay, the Colvins placed it on *Triggerstreet.com*. Over the course of the next year, it was downloaded dozens of times and received 10 written reviews. The reviews placed it in the upper echelon of scripts on *Triggerstreet.com*, as it received a total of 4 out of 5 stars. The comments were extremely constructive and many of the suggested changes are ones that seem to be embodied in the final version of *Django Unchained*.

14. The Colvins' heart, bones and muscles are the foundation for *Django Unchained*, which steals the very story noted above from *Freedom*, including aspects from notes by coverage from William and Morris readers and various reviews by readers on *Triggerstreet.com*. One way that an infringer will attempt to evade sanctions is by creating differences from the copyrighted work. Plaintiffs believe that Tarantino recognized the enormous potential of the uniquely original *Freedom* and developed the derivative product that debuted almost three years ago.

15. An original work is the property of its owner. To steal it is a crime of law and ethics. This industry and, in particular, our system of jurisprudence, has made it very difficult for owners of truly unique ideas to protect their property rights from Hollywood theft. Tarantino's "homages" in this case should not be tolerated. If a jury finds him culpable for his plastic surgery, he and those that benefited from his theft should be held accountable. This case is a clarion call for Hollywood to stop making jokes about "stealing" the works of others and to call out bad actors in this industry the same way the world of sports is starting to do. Cheating is cheating, in any walk of life and in any manner, and just because one works behind the curtain of Tinsel Town does not make cheating acceptable or proper, especially for those who have such great influence over our society.

16. The Defendants are high profile players within Hollywood. They have greatly profited, monetarily and favorable industry recognition, through their derivation of *Freedom*. The derivation is a theft of Plaintiffs' copyrightable material. The theft is exploitative and unconscionable. The thief and his fellow profiteers should face a jury.

**JURISDICTION AND VENUE**

17. This is a civil action for violations of the Copyright Act of 1976, 17 U.S.C. §§ 101, et seq. and violations of various related state laws.

18. This Court has subject matter jurisdiction over these federal questions pursuant to 18 U.S.C. § 1964 and 28 U.S.C. §§ 1331 and 1338.

19. Venue is proper in this District pursuant to 18 U.S.C. § 1965 and 28 U.S.C. §§ 1391(b) and (c) and 1400(a). As herein alleged, this action arises out of willful, intentional, and unlawful conduct of each of the Defendants, their agents, and/or their employees. They either conducted or expressly targeted in various judicial districts within the United States and its territories, including this one, and knew or should have known their actions would lead to the infliction of substantial harm in this locale and in this judicial district. A substantial part of the transactions, occurrences, and events giving rise to Plaintiffs' claims occurred within this judicial district. Each of the Defendants named herein have minimum contacts with the United States, this locale, and are therefore subject to nationwide service of process under 18 U.S.C. § 1965(d).

**PARTIES**

20. Plaintiff Torrance J. Colvin (hereinafter "Plaintiff" or "T. Colvin") is the founder and sole owner of Plaintiff 24k Black. Plaintiff T. Colvin is an attorney by trade, having been licensed for the last 17 years and currently focuses his practice on litigation affecting those who have been harmed. Plaintiff spent several years as an attorney at the NAACP. In addition,

Plaintiff has taught trial advocacy, negotiation and conflict resolution, and communication law courses at Howard University. Plaintiff is a member of a small group of trial attorneys who have successfully tried and won multi-million dollar jury verdicts. Plaintiff resides in Washington, D.C.

21.    Plaintiff Oscar Colvin, Jr. is a retired attorney from the state of New Hampshire and served as both a Public Defender and a prosecutor.

22.    Defendant Quentin Tarantino is a screenwriter, producer, director and self-acknowledged intellectual property thief.

23.    Defendant The Weinstein Company LLC ("TWC") is a Delaware limited liability company. Upon information and belief, Defendant TWC was involved in the production, distribution, licensing, sale, publishing, and exploitation through various media outlets, without Plaintiffs' consent, of the infringing work entitled *Django Unchained*, and procured illegally gained revenues and profits in connection therewith.

24.    Defendant Columbia Pictures ("Columbia") is a California corporation. Columbia is a major motion picture studio involved in all facets of production and distribution of motion pictures. Upon information and belief, Columbia was involved in the production, distribution, licensing, sale, publishing, and exploitation through various media outlets, without Plaintiffs' consent, of the infringing work entitled *Djago Unchained*, and procured illegally gained revenues and profits in connection therewith.

25.    Plaintiffs are informed and believe, and based thereon allege, that each of the fictitiously named Defendants identified in the caption hereinabove as Does 1 through 50, inclusive, is in some manner responsible or legally liable for the actions, damages, events, transactions, and occurrences alleged herein. The true names and capacities of such fictitiously

- 9 -
PLAINTIFFS COMPLAINT FOR DAMAGES

named Defendants, whether individual, corporate, associated or otherwise, are presently unknown to Plaintiffs. Plaintiffs will timely amend this Complaint to assert the true names and capacities of such fictitiously named Defendants when the same have been ascertained. For convenience, each reference herein to the Defendants collectively shall also refer to the Doe Defendants and each of them.

26. Finally, Plaintiffs are informed and believe, and based thereon allege, that at all times relevant hereto, each of the Defendants was the agent, co-conspirator and/or representative of each of the other Defendants herein during the events alleged; that at all times relevant hereto each of the Defendants was acting within the course and scope of such agency, conspiracy or representation, and that each of the Defendants is jointly and severally responsible and liable for the damages that are herein alleged to have been sustained, except as otherwise alleged at the time of trial.

## FACTS COMMON TO ALL CLAIMS

27. This case is about the theft of the body, structure, theme, and soul of a unique, original, copyrighted screenplay from a production company and its owners by Defendants. All defendants are liable to plaintiffs for copyright infringement and for using plaintiffs' original materials.

28. There is a small but vibrant history of slavery-based movies prior to *Freedom* which included, *Amistad, Beloved, Drum, Glory, Goodbye Uncle Tom, Gone with the Wind, Jefferson in Paris, The Legend of Nigger Charley, Roots, Sankofa, Solomon Northup's Odyssey,* and *Uncle Tom's Cabin.*

29. There was, however, never a movie like *Freedom,* which was based on a uniquely original idea – an escaped slave voluntarily returning to the plantation to retrieve his family.

*Freedom* was written as an action story and a romance. Ultimately, it is a fantasy. It was not your typical action story and definitely not your typical romance. Jackson (Django) was a slave who fought back. He was self-assured and confident, yet recognized that timing was everything. The romance between Jackson and Linda (Django and Brumhilde) is a love for the ages. His love for her is so strong that he risks certain death and/or re-enslavement by travelling from the relative safety of the North to the certain perils of the South, for the mere opportunity to attempt to obtain her freedom.

30. Defendant Tarantino claims to have based his screenplay on Sergio Corbucci's *Django*, but the truth is that there are far more similarities between *Freedom* and *Django Unchained* than between *Django* and *Django Unchained*. Defendant Tarantino took the plot lines and main story of *Freedom* and Tarantino-ized them. Basically, he added gratuitous use of violence and repetitive use of the word "nigger." While Tarantino has conducted many interviews on the subject of his inspiration, none of the "inspiring" words rise to the level of similarity as that of *Freedom*.

### FIRST CLAIM FOR RELIEF

**(Copyright Infringement 17 U.S.C. §§ 1010 et seq. Against All Defendants)**

31. Plaintiffs hereby incorporate the allegations set forth above in paragraphs 1 through 32, above, as though fully set forth herein.

32. Plaintiffs own the copyrights to the original screenplay drafts of *Freedom*, which include an original, protected expression of a former slave embarking on an action-filled adventure into a southern state during the period of slavery, for the sole purpose of saving his family from the clutches of an evil slave master. In 2004, Plaintiffs registered a draft of

*Freedom* with the Writers Guild of America West. The same draft of *Freedom,* created in 2002, had its copyright certified on February 23, 2014 by the United States Copyright Office.

33. Nearly every aspect of *Django Unchained*, from the beginning to the end, contains plotlines, themes, characters, relationships, settings, scenes, sequences, mood, pacing, and fictional inventions that were written by the Plaintiffs and incorporated into the Work. Plaintiffs original literary creations incorporated into the Work are unique, valuable and copyright protectable. Set forth below is a side by side comparison of some of the plotlines, themes, characters, relationships, settings, scenes, sequences, mood, pacing, and fictional inventions embodied in the Work and in *Django Unchained* that are persuasive evidence that Defendant Tarantino's *Django Unchained* is derivative of the Plaintiffs' Work.

34. As Plaintiffs are the sole owners of the copyright of the Work, Defendant Tarantino did not have the right to pay homage to Plaintiffs and incorporate the Work into *Django Unchained.* Plaintiffs have never granted to Defendants (or anyone else) a license to use and profit from the Work.

35. Accordingly, by producing and distributing *Django Unchained* based on the Work, in addition to producing and distributing all of the advertising material in support of *Django Unchained*, the Defendants knowingly, intentionally, and willingly infringed and will continue to infringe, Plaintiffs copyright in the Work. By distributing the movie outside of the United States, Columbia Pictures and Does 1-50 infringed, and will continue to infringe Plaintiffs work.

36. *Django Unchained* is derivative of *Freedom* and all of the related copyrighted, protected expression intended for use in a motion picture, are owned by Plaintiffs. The

- 12 -
PLAINTIFFS COMPLAINT FOR DAMAGES

Defendants copied material and large quantities of Plaintiffs' protectable expression in producing *Django Unchained.*

37. Defendants exploited, distributed and published the infringing work *Django Unchained*, which, in part outright duplicates protected expression from *Freedom* and the related protected works, which in part presents a comprehensive literal similarity to Plaintiffs' aforementioned, protected copyrighted works, and which in part copied portions of these copyrighted works that are important to the impact and character of the work from which these copied portions were taken.

38. Defendant Tarantino had access to Plaintiffs' protectable expression set forth in its copyrighted and owned works entitled *Freedom*, as alleged herein, and this is in part proven by the striking similarity of the plots of the works at issue.

39. The Defendants distributed copies of the motion picture *Django Unchained* for profit and associated financial and other industry-related advantages.

40. As a direct and proximate result of Defendants copyright infringement, Plaintiffs have been damaged in an amount that cannot as yet be fully ascertained, but which Plaintiffs are informed and allege thereon exceeds over several hundred million dollars according to proof at the time of trial. These damages include, without limitation, Plaintiffs' actual damages suffered by them as a result of Defendants' infringement (including, without limitation, the loss of future earnings Plaintiffs would have received had they been properly credited with writing *Django Unchained*) and Defendants profits from *Django Unchained* and any and all derivative works based on the Work that are not taken into account in computing Plaintiffs' actual damages.

41. Unless this Court restrains Defendants from further commission of said acts, Plaintiffs will suffer irreparable injury and damage, much of which cannot be reasonably or

adequately measured or compensated in damages. Plaintiffs are therefore entitled to a temporary restraining order, preliminary injunction and permanent injunction restraining Defendants and their officers, directors, agents, employees, affiliates, subsidiaries, distributors and all persons acting in concert with them, from engaging in further acts of infringement in violation of the Copyright Act.

## THE HEART, MUSCLES AND BONES

42. A former slave is willing to return to the South in an attempt to gain the freedom of his family. This is antebellum fantasy requiring a willingness to ignore the realities of the time that would have made the actual accomplishment an improbability bordering on the impossible. Thus a white benefactor/accomplice would have to assist the former slave. This was the heart of *Freedom* of the early 2000s. This was the heart of *Django Unchained*. Within that heart, a love story was pulsating.

43. Below is a simple table depicting *similarities* that are indicative of the theft of an original copyrighted work. These similarities illustrate the heart, muscles and bones of *Freedom* that were infringed by *Django Unchained*. Tarantino's infringement amounts to plastic surgery and costume dressing of *Freedom*, a uniquely original work. Just as *O*, a story about a modern high school basketball player is instantly recognized as derived from *Othello*, *Django Unchained* is easily recognized as derived from *Freedom*.

|  | ***Freedom*** | ***Django: Unchained*** |
|---|---|---|
| a. Story line | Escaped slave wants to buy family out of slavery and risks certain re-enslavement and possible death to get back to the loves of his life<br><br>Jackson is Django<br>Samson is Schultz<br>Linda is Brunnhilde | Emancipated slave wants to buy wife out of slavery and re-enslavement and possible death to get back to the love of his life<br><br>Django is Jackson<br>Schultz is Samson<br>Brunnhilde is Linda |

|  | Junie is Candie | Candie is Junie |
|---|---|---|
| b. Opening scene(s) | Auction block with chained slaves marching prior to being purchased | Chained slaves marching after being purchased |
| c. Quick portrayal of sympathetic individual | Samson conversation about evil of slavery while Jackson on auction block | Schultz kills slavers, frees slaves, encouraging slaves to kill remaining slave buyer |
| d. Quickly dashed hopes of earning enough money quickly to purchase family out of slavery | Jackson worked for insignificant wages trying to obtain enough to purchase family but soon realized that they would be dead before he earned enough for the purchase | Django earned $75 and was told how much more he needed to earn and his hopes for instant ability to repurchase his wife were dashed. |
| e. Lashing for trivial offense | Jackson's son whipped for throwing seeds. Explicit statement about wasting master's goods | Young woman about to be whipped for breaking eggs. Explicit statement about wasting master's goods |
| f. Hero attempting to take punishment for loved one | Jackson begged to be whipped instead of son. | Django requested whipping instead of wife. |
| g. Rape of hero's wife | Implicit. Impregnated by Junie | Brutal in screenplay. Cut from final edition. |
| h. Hero's last name | Freeman | Freeman |
| i. Uncharacteristic hero's attitude toward whites | Jackson defiance toward white man even on auction block; Jackson shooting and killing slave overseer | Django openly sassing white men, much less killing them |
| j. Antagonistic attitude toward other blacks | Jackson's interaction with blacks marked by antipathy upon initial meeting | Django – hard pressed to find cordial relationship with another slave |
| k. Black white partnership to rescue hero's loved one(s) | Samson assisted Jackson | Schultz assisted Django |
| l. White man killing another white man on departure from plantation | Samson killing Grant, Sr. at Grant's plantation | Schultz killing Candie at Candie's plantation |

44.     Additional similarities will be produced in discovery and trial.

- 15 -
PLAINTIFFS COMPLAINT FOR DAMAGES

45. Plaintiffs are the sole owners of all right, title and interest in and to the copyright of the Work.

46. Defendants' wrongful conduct as alleged herein amounts to a wrongful appropriation of *Freedom* and of rights therein, thus depriving Plaintiffs of the full use and value of *Freedom* and, of the attendant goodwill, resulting in likely confusion of and is a fraud on the public.

47. Defendants' actions have caused and will continue to cause damages and irreparable harm to Plaintiffs, in amounts to be determined at trial but no less than hundreds of millions of dollars.

48. The aforementioned acts of Defendants were unlawful. In particular, as alleged herein above, the Defendants committed unlawful violations of United States copyright law.

49. Defendants' actions were unfair, immoral, unethical, oppressive, unscrupulous, and violated principles of good faith and fair dealing. The Defendants, as alleged herein, stole the heart, bones and muscles of a uniquely original, compelling story about love and courage in a slave setting, camouflaged it, and exploited it for their own unlawful gain.

**50.** Defendant Tarantino's conduct was fraudulent in that he attempted to deceive reasonable consumers by stealing the potentially award winning story of *Freedom* and passing it off to consumers as his own original work, by camouflaging it as the resulting infringing work, *Django Unchained*.

**SECOND CLAIM FOR RELIEF**

**(Accounting)**

51. Plaintiffs incorporate herein by this reference the allegations set forth in paragraphs 1 through 52 above.

52. Plaintiffs are entitled to a full and complete accounting with respect to all revenues derived by Defendants in order to determine what profits, royalties, and other compensation to which Plaintiffs are entitled, and given that such illegally derived profits must be kept in a constructive trust, and then accounted for in their entirety.

53. The precise amount of illegally realized profits that Defendants have collected is unknown to Plaintiffs and cannot be ascertained without an accounting. Plaintiffs are informed and believes and thereon alleges that the amount owed to Plaintiffs exceeds hundreds of millions of dollars.

## CLOSING ALLEGATIONS

54. "Coincidence is the word we use when we can't see the levers and pulleys." – Emma Bull

55. There are a plethora of similarities between *Freedom* and *Django Unchained*. Defendants would call them coincidences, however, the intentional use of our work is neither an accident nor coincidence. It is not a coincidence that both stories are about an escaped or emancipated slave who desires to purchase/rescue his loved ones from slavery. It is not a coincidence that they both follow a similar path, with many of the scenes lining up as if traced using vellum paper. It is not a coincidence that in the dozens of films and books about slavery, one is unlikely to find a story about a former slave returning back to the south to rescue his family; that is an original Academy Award-winning idea. It is not a coincidence that both Jackson and Django both inhabit the world of their oppressor comfortably, even to the extent that they both are willing killers of white men. It is not a coincidence, that both works reference a slave being lashed for a trivial offense and that both Jackson and Django request to take a lashing in the stead of a loved one. It is not a coincidence that *Freedom* and *Django Unchained* both

paint a vivid and visceral picture of the horrors of slavery (whether it be in lashings or rapes or brutal fights).  It is not a coincidence that Jackson and Django both openly disrespected whites in a position of authority, during a time period when that very action would have most likely resulted in the death of the black man doing it; instead, it was the purposeful intent of Plaintiffs to create a strong action hero unlike any depiction of a slave that previously existed.  It is not a coincidence that there was an extremely unlikely black and white partnership between Jackson and Samson and Django and Schultz during the antebellum/Civil War era. *Freedom* was an original expression of a uniquely original idea for a screenplay about slavery. The bottom line is that the similarities were not coincidences. They were the purposeful actions of Defendants Tarantino, The Weinstein Company and Columbia Pictures.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

**On the First Claim for Copyright Infringement Against All Defendants:**

1. For an order imposing a constructive trust over those monies obtained by Defendants as a result of their violation of the Copyright Act;

2. For an award of damages, including actual damages and any gains, profits and advantages obtained by Defendants, as a result of their acts of infringement in an amount believe to exceed $100 Million according to proof; and

3. For prejudgment interest at the highest legal rate from the date of the infringement;

4. For compensatory damages, in an amount in excess of hundreds of millions of dollars to be proven at trial;

5. For prejudgment interest at the highest legal rate from the date of the infringement; and

6. For exemplary and/or punitive damages.

**On the Second Claim for an Accounting:**

7. For a full and complete accounting with respect to all revenues derived by Defendants in order to determine what profits, royalties, and other compensation to which Plaintiffs are entitled.

**On all causes of action:**

8. For costs of suit incurred;

9. Attorneys' fees, as allowed by law or contract; and

10. For such other further relief as the Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby submits their demand for a jury trial in this matter.

December 24, 2015

Respectfully submitted,

Torrance J. Colvin, Esq.
The Colvin Law Firm
7600 Georgia Avenue, NW
Suite 100N
Washington, DC 20012
(202) 688-1300
tc@colvinlegal.com